UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
NACHMAN SPIRA et al.,

               Plaintiffs,

        - against -

AEROFLOT-RUSSIAN AIRLINES,

               Defendant.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-4224 (PKC) (RLM)

PAMELA K. CHEN, United States District Judge:

      Before the Court is Defendant Aeroflot-Russian Airlines' motion to dismiss the Complaint of Plaintiffs Nachman Spira and 58 others. For the reasons below, the Court grants Defendant's motion and denies Plaintiffs' request for leave to amend the Complaint.

## BACKGROUND

### I. Factual Background[1]

      On July 4, 2017, Plaintiffs were on a school trip to Israel. They were scheduled to depart from John F. Kennedy International Airport in Jamaica, New York, and arrive in Tel Aviv, Israel, on Defendant's Flight SU 103 (the "Flight"). (Complaint ("Compl."), Dkt. 1, ¶¶ 6–7.) The Flight was delayed for more than three and a half hours. (*Id.* ¶ 9.) During that time, Plaintiffs were given inadequate access to food, water, and ventilation. (*Id.* ¶¶ 10–12.) The Flight was ultimately cancelled, and Plaintiffs were placed on a replacement flight 24 hours later. (*Id.* ¶ 15.)

---

[1] The factual background is based on the allegations in the Complaint, which the Court accepts as true for purposes of this motion. *See Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 429 (2d Cir. 2012).

1

By purchasing a ticket for the Flight, Plaintiffs agreed to Defendant's "Conditions of carriage" (the "Contract").[2] The Contract includes a provision entitled "Liability":

## Liability

### Information about rights of air passengers in case of flight delay or flight cancellation

Aeroflot aims to inform its passengers who are affected by delays or cancellations of flights as soon as possible and to assist its customers locally. Based on the applicable General Conditions of Carriage, effective as of 21 October, 2007, Aeroflot offers the following compensation:

1. In case of flight irregularities (delay/cancellation), aircraft replacement or other unexpected circumstances, passengers are eligible for either a single free of charge phone call or fax transmission.
2. In the event of delays of more than four hours, passengers (independent of the flight class and «OK Status» of their ticket«) are eligible for meals and drinks corresponding to the waiting time and the time of day (either breakfast, lunch or dinner).
3. Drinks will be offered for delays of two hours or more.
4. If the delay is six hours or more during the night, or eight hours or more during the day, Aeroflot provides checked-in passengers (or with «OK Status») with hotel accommodation plus catering services and transfer to and from the hotel.

### Information for passengers flying to (from) Israel:

Israeli Aviation Services Law (Compensation and Assistance for Flight Cancellation or Change of Conditions) (Pdf, 135 Kb)

*Liability*, AEROFLOT RUSSIAN AIRLINES, https://www.aeroflot.ru/xx-en/information/legal/liability (last visited July 22, 2021). The bottom portion of this section, "Information for passengers flying to (from) Israel," provides a link to Israel's Aviation Services Law ("ASL"), which, in turn, concerns "Compensation and Assistance for Flight Cancellation or Change of Conditions." AVIATION SERVICES LAW, https://www.aeroflot.ru/media/aflfiles/docs/legal/aviation_services_law_eng1.pdf (last visited July 22, 2021), at 1.[3] Under the ASL, "[a] passenger for whom a Flight Ticket has been issued which has been canceled, will be entitled to . . . Benefits"

---

[2] *Conditions of carriage*, AEROFLOT RUSSIAN AIRLINES, https://www.aeroflot.ru/us-en/information/legal/contract?_preferredLocale=us&_preferredLanguage=en (last visited July 22, 2021). The Complaint does not include the Contract, but, as explained below, Plaintiffs seek to amend the Complaint to include it.

[3] Although Plaintiffs rely on the ASL, they do not provide its full text. The ASL is available through the link provided in the Contract, and the Court relies on the linked document.

including (1) "Assistance Services," (2) "reimbursement," and/or (3) "monetary compensation." *Id.* at 5. In certain circumstances, "[t]he court [also] may award compensation to a passenger who has been issued a Flight Ticket independent of the damages . . . , in an amount which will not be greater than 10,390 New Israel Sheqels," as "Exemplary Damages." *Id.* at 8. Israel's "Minister [of Transport, National Infrastructure and Road Safety] is responsible for the execution of [the ASL]." *Id.* at 1, 10. "Regulations and orders under [the ASL] require the approval of the Economics Committee of the Knesset." *Id.* at 10.

## II. Procedural Background

On September 10, 2020, Plaintiffs initiated this action, based on diversity jurisdiction, alleging a violation of the ASL, intentional infliction of emotional distress ("IIED"), and seeking reimbursement for expenses paid by Plaintiffs' school. (*See generally* Compl., Dkt. 1.) Plaintiffs did not sue for breach of the Contract, but sought to bring claims directly under the ASL. (*Id.*)

On February 12, 2021, Defendant sought a pre-motion conference regarding an anticipated motion to dismiss the Complaint, in part on the ground that "the Israel [ASL] is not enforceable in courts in the United States." (*See* Defendant's Letter, Dkt. 7, at 2.) In a response on February 24, 2020, Plaintiffs "conced[ed]" that their IIED claim was "time-barred" and that "the school lack[ed] standing" to seek reimbursement. (Plaintiffs' Letter ("Pl. Ltr."), Dkt. 8, at ECF[4] 1.) Plaintiffs agreed to limit their causes of action to those under the ASL and sought to "further amend the summons to particularize [their] demand for relief pursuant to [the ASL] as a contractual obligation of [Defendant]." (*Id.*) They argued that "[s]ince [] Plaintiffs were travelling to Israel, Israel's

---

[4] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

3

[ASL] is part and parcel of [the Contract]" and, "[a]s such, contractually, [Defendant] is bound by said terms." (*Id.* at ECF 2.)

On March 1, 2021, the Court construed Defendant's pre-motion conference letter as a motion to dismiss and directed Defendant to file a supplemental brief. (3/1/2021 Docket Order.) Defendant supplemented its letter on March 19, 2021, addressing Plaintiffs' argument that the Contract incorporated the ASL. (*See generally* Defendant's Brief ("Def. Br."), Dkt. 9.) Plaintiffs filed a reply on April 11, 2021. (Plaintiff's Reply ("Pl. Reply"), Dkt. 10.) Defendant's motion to dismiss is now before the Court.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). "In addressing the sufficiency of a complaint, [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

4

When considering the pleadings on a Rule 12(b)(6) motion, "[a] complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (citation and quotations omitted). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (citations and quotations omitted).

## DISCUSSION

### I. Plaintiffs' Complaint Is Dismissed for Failing to State a Claim

Plaintiffs argue that the Court should not dismiss the Complaint because Defendant "incorporate[ed] [the ASL] into [the Contract]" through the Liability provision. (Pl. Reply, Dkt. 10, at ECF 2.) Plaintiffs thus contend that they are entitled to bring a claim "for relief pursuant to [the language of the ASL] as a contractual obligation of [Defendant]." (Pl. Ltr., Dkt. 8, at ECF 1.) This is incorrect.

The Complaint, in fact, does not rely on a contract theory, but instead seeks to bring claims directly under the ASL. However, the ASL cannot be enforced in this Court. In *Bernfeld v. US Airways, Inc.*, No. 14-CV-5573 (SJC), 2016 WL 1583057, at *3 (N.D. Ill. Apr. 20, 2016), the Northern District of Illinois held "that the Israeli [ASL] is not judicially enforceable in [United States] [c]ourt[s]."[5] It explained that "for a [flight] delay damages claim under a foreign statute to be actionable under a direct claim in the United States, the foreign law must provide for a cause of action in the United States or, at the minimum, set forth an enforcement regime that could be implemented by United States courts without violating principles of international comity." *Id.*

---

[5] Though there is little authority on this issue and *Bernfeld* is the only decision of which the Court is aware that addresses the ASL, the Court finds its reasoning persuasive and therefore adopts it.

(citing *Volodarskiy v. Delta Airlines, Inc.*, 784 F.3d 349, 357 (7th Cir. 2015)). "The [ASL]," the *Bernfeld* court reasoned, "appears to establish a regulatory scheme of passengers['] rights to be enforced through administrative actions, as evinced by the law's provisions that it is to be executed by [Israel's] Minister of Transport, National Infrastructure, and Road Safety and that regulations under the law must be approved by the Economics Committee of the Knesset." *Id.* The court thus concluded that the ASL does not create a cause of action in United States courts. *Cf. Volodarskiy*, 784 F.3d at 354 (holding that the plaintiff could not bring a claim in a United States court under a European Union airfare regulation because, "when read together, [the regulation's] provisions establish[ed] that direct actions to enforce [the contract] rights are limited to courts in EU Member States"); *Click 2 Refund Inc. v. Brit. Airways PLC*, No. 19-CV-5399 (CAS) (SK), 2019 WL 6135123, at *3 (C.D. Cal. Nov. 18, 2019) (same).

Plaintiffs challenge the reasoning in *Bernfeld*, pointing to the ASL's provision that "[t]he *court* may award compensation to a passenger who has been issued a Flight Ticket independent of the damages . . . , in an amount which will not be greater than 10,390 New Israel Sheqels." (Pl. Ltr., Dkt. 8, at ECF 3.) Plaintiffs appear to argue that the reference to "the court" suggests that the ASL creates a cause of action in *any* court, including courts of the United States. But the Seventh Circuit rejected essentially the same argument in *Volodarskiy*, where "[t]he plaintiffs insist[ed] that [a foreign flight-delay statute's] reference to 'courts' and the 'procedures of national law' mean[t] that direct claims under [the statute] can be brought in the courts of *any* country." 784 F.3d at 354. The Seventh Circuit concluded that this "reading ignore[d] the broader context of th[e] [statutory] passage." *Id.* at 354–55. Here, similarly, Plaintiffs ignore the broader context of the ASL, which contemplates execution by Israel's "Minister of Transport, National Infrastructure, and Road Safety" "through administrative actions," *Bernfeld*, 2016 WL 1583057, at *3,

6

compensation in "New Israel Sheqels," AVIATION SERVICES LAW at 8, and a regulatory scheme "requir[ing] the approval of the Economics Committee of the Knesset," *id.* at 10.

Accordingly, because the Complaint contains only a direct claim under the ASL, which is not enforceable in this Court, and Plaintiffs withdraw their IIED and reimbursement causes of action, the Complaint is dismissed for failure to state a claim.

## II.   The Contract Does Not Incorporate the ASL

Presumably to avoid this defect in their direct claim under the ASL and apparently abandoning that claim, Plaintiffs argue in their reply to the dismissal motion that Defendant "incorporate[ed] [the ASL] into their Conditions of carriage," and thus Plaintiffs can sue Defendant for breach of contract based on the provisions of the ASL. (Pl. Reply, Dkt. 10, at ECF 2[6].)

As noted, Plaintiffs did not attach the Contract to the Complaint and did not raise a contract argument until their response to Defendant's motion. (*See* Pl. Ltr., Dkt. 8, at ECF 4). Plaintiffs thus ask to "amend the summons to particularize [their] demand for relief pursuant to [the ASL] as a contractual obligation of [Defendant]." (*Id.* at ECF 1.) But even were the Court to treat Plaintiffs' Reply as a motion seeking leave to amend their claim to a contract theory, the proposed amendment would be futile. *See Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) ("Leave to amend may be denied if the proposed amendment would be futile.").

As an initial matter, Plaintiffs are correct that even where a claimant would otherwise lack a cause of action under a particular statute, parties to a contract "may incorporate into the contract

---

[6] (*See also* Pl. Ltr., Dkt. 8, at ECF 4 (seeking to distinguish *Bernfeld*: "In *Bernfeld*, there is no evidence that [the] [p]laintiff's attorney introduced the airlines' general conditions of carriage, which included Israel's [ASL], by reference, nor is there any evidence that said attorney requested that said law be applied as part of the airline's contractual obligation to their passengers flying to Israel.").)

7

by reference extrinsic material which may, among other things, be the provisions of some foreign law." Restatement (Second) of Conflict of Laws § 187 cmt. n.c (1971). Thus, a foreign statute "referred to in a written instrument and sufficiently described may be made a part of the instrument as if incorporated into the body of it." *In re Lehman Bros. Holdings Inc.*, 970 F.3d 91, 101 (2d Cir. 2020) (per curiam) (citation, quotations, and brackets omitted).[7] "[T]he paper to be incorporated into a written instrument by reference must be so referred to and described in the instrument that the paper may be *identified beyond all reasonable doubt*." *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) (emphasis in original) (quoting *Chiacchia v. National Westminster Bank USA*, 507 N.Y.S.2d 888, 889–90 (N.Y. App. Div. 1986)). "[A] party will not be bound to the terms of any document unless it is clearly identified in the agreement." *Id.* (citation omitted).

"[W]hile express identification of a document is a *necessary* condition for incorporation of that document, it is not a *sufficient* one." *Intesa Sanpaolo, S.p.A. v. Credit Agricole Corporate & Inv. Bank*, No. 12-CV-2683 (RWS), 2013 WL 4856199, at *3 (S.D.N.Y. Sept. 10, 2013). "In addition to language explicitly identifying the referenced document, there must also be language that 'clearly communicates that the purpose of the reference is to incorporate the referenced material into the contract, rather than merely to acknowledge that the referenced material is relevant to the contract, e.g., as background law.'" *Id.* (brackets omitted) (quoting *Northrop Grumman Info. Tech., Inc. v. United States*, 535 F.3d 1339, 1345 (Fed. Cir. 2008)).

---

[7] Neither party in this case argues that the Court should interpret the Contract under a particular jurisdiction's law. Because "courts sitting in diversity may properly rely on the forum state's law where neither party asserts that another jurisdiction's law meaningfully differs," *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 276 (2d Cir. 2013), the Court construes the Contract in light of New York law.

This issue arose in *Kogan v. Scandinavian Airlines System*, 253 F. Supp. 3d 1022, 1024 (N.D. Ill. 2017), where the plaintiff sued the Scandinavian Airlines System after it delayed her flight from Copenhagen to Chicago. The plaintiff argued that the airfare contract between the parties incorporated "EU 261, a regulation setting forth a framework for ensuring that passengers are adequately compensated for flight delays and cancellations." *Id.* She relied on two provisions in the contract: "actions[,] including actions relating to passenger rights subject to [EU 261,] shall be limited in accordance with national law," and

> [i]f your flight is delayed 3 hours or more and if the delay is not caused by Extraordinary Circumstances which could not have been avoided if all reasonable measures had been taken[,] you will be entitled to compensation if provided by applicable law. For travel within EU and from a non-EU country into EU[,] [the] applicable law is [EU 261].

*Id.* at 1025–26

The court rejected the plaintiff's argument that these paragraphs incorporated EU 261 into the airfare contract. *Id.* at 1026. It explained that the "[m]ere reference to another contract or document is not sufficient to incorporate its terms into a contract." *Id.* at 1025 (quoting *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 666 (7th Cir. 2002)). Although the first relevant paragraph of the contract mentioned EU 261, it "reflect[ed] no intent to incorporate EU 261 by reference." *Id.* at 1026. Rather, "[i]t merely acknowledge[d] the possibility that some passengers may have 'rights subject to EU 261.'" *Id.* (brackets omitted). Likewise, the second relevant paragraph "simply [gave] passengers notice that an extrinsic body of law may independently provide compensation." *Id.* The court thus granted summary judgment to the defendant. *Id.* at 1027.

Similarly, in *Dochak v. Polskie Linie Lotnicze LOT S.A.*, 189 F. Supp. 3d 798, 802–03 (N.D. Ill. 2016), the court held that provisions of an airfare contract did not incorporate EU 261. There, the plaintiff relied on the contract's provision that, "[i]n the event of denied boarding and of cancellation or long delay of flights, passengers are entitled to rights provided for in [EU 261],

9

in accordance with the rules and to the extent set forth by this Regulation." *Id.* at 803. The court granted the defendant's motion to dismiss, explaining that this paragraph did "not plausibly constitute incorporation of [EU 261]," but merely gave the "[p]laintiffs notice of their rights under EU 261." *Id.* at 803–04.

As noted, the Liability provision in the Contract includes "[i]nformation about rights of air passengers in case of flight delay or flight cancellation," and says:

> [Defendant] aims to inform its passengers who are affected by delays or cancellations of flights as soon as possible and to assist its customers locally. Based on the applicable General Conditions of Carriage, effective as of 21 October, 2007, [Defendant] offers the following compensation:
>
> 1. In case of flight irregularities (delay/cancellation), aircraft replacement or other unexpected circumstances, passengers are eligible for either a single free of charge phone call or fax transmission.
>
> 2. In the event of delays of more than four hours, passengers (independent of the flight class and [preferred status] of their ticket[]) are eligible for meals and drinks corresponding to the waiting time and the time of day (either breakfast, lunch or dinner).
>
> 3. Drinks will be offered for delays of two hours or more.
>
> 4. If the delay is six hours or more during the night, or eight hours or more during the day, [Defendant] provides checked-in passengers (or with [preferred status]) with hotel accommodation plus catering services and transfer to and from the hotel.

Beneath this section, in larger font, is the notice, "Information for passengers flying to (from) Israel," with a link to the ASL.[8]

Given the link to the ASL in the Contract, Plaintiffs are right that the ASL is thereby "referred to and described in the instrument [such] that the [ASL] may be *identified beyond all reasonable doubt*." *PaineWebber Inc.*, 81 F.3d at 1201 (citation and quotations omitted). The

---

[8] Although the Contract is not attached to the Complaint, the Court considers it because it is attached to Plaintiffs' proposal to amend, and, anyway, the proposed amended complaint "relies heavily upon its terms and effect." *See Nicosia*, 834 F.3d at 230 (citations and quotations omitted).

question thus becomes whether, "[i]n addition to language explicitly identifying the [ASL], there is] language that clearly communicates that the purpose of the reference is to incorporate the [ASL] into the contract." *Intesa Sanpaolo, S.p.A.*, 2013 WL 4856199, at *3 (citation, quotations, and brackets omitted).

Plaintiffs contend that the link to the ASL, under the heading "Information for passengers flying to (from) Israel," incorporates the "ASL into [the] terms and conditions of carriage for passengers flying to (from) Israel," because the four enumerated forms of "compensation" Defendant offers in the section above that heading "are applicable for passengers who are flying other than to or from Israel." (Pl. Reply, Dkt. 10, at ECF 3 (emphasis removed).) By implication, Plaintiffs contend, the provision linking to the ASL incorporates the statute as Defendant's "offer" of "compensation" to passengers traveling to Israel, such as Plaintiffs.

Plaintiffs' argument misconstrues the Contract. In contrast to the express language "offering" four forms of compensation to passengers in the first part of the Liability Section, the second part of that section merely references the ASL as "*information* for passengers" flying to or from Israel. *Liability*, AEROFLOT RUSSIAN AIRLINES (emphasis added). Nowhere in the Liability Section does it say that *Defendant will provide* the compensation listed in the ASL; rather, it merely advises that the ASL may provide a separate avenue of relief for passengers traveling to or from Israel. That the Contract specifies the four ways in which Defendant "offers" "compensation" to passengers confirms that the additional "information" section with the link to the ASL is not "compensation" *Defendant* "offers."

Thus, although the Contract "explicitly identif[ies]" the ASL, there is no "language that 'clearly communicates that the purpose of the reference is to incorporate the [ASL] into the [C]ontract, rather than merely to acknowledge that the [ASL] is relevant to the contract, e.g., as

11

background law.'" *See Intesa*, 2013 WL 4856199, at *3 (brackets omitted) (quoting *Northrop Grumman Info. Tech., Inc.*, 535 F.3d at 1345). In this respect, this case resembles *Dochak*, where the airfare contract did "not plausibly constitute incorporation of [EU 261]" despite advising passengers that they "are entitled to rights provided for in [EU 261]," because it merely gave the "[p]laintiffs notice of their rights under EU 261." *See* 189 F. Supp. 3d at 803. This case also resembles *Kogan*, where the contract at issue "reflect[ed] no intent to incorporate EU 261 by reference," but "merely acknowledge[d] the possibility that some passengers may have 'rights subject to EU 261.'" 253 F. Supp. 3d at 1026 (brackets omitted).

Accordingly, because the Contract does not incorporate the ASL, there is no basis for Plaintiffs' "demand [for] relief pursuant to [the ASL] as a contractual obligation of [Defendant]" (Pl. Reply, Dkt. 10, at ECF 2), and Plaintiffs' request for leave to amend to "particularize" this demand for relief (Pl. Ltr., Dkt. 8, at 1) must be denied as futile. *See Chunn*, 916 F.3d at 208.

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to dismiss in its entirety. The Clerk of Court is respectfully directed to enter judgment accordingly.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: August 6, 2021
      Brooklyn, New York